*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  11a0280p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____



NORA ADELE ETTIENNE,

　　　　　　　　　　*Petitioner,*

　　　　*v.*

　　　　　　　　　　　　　　　　No. 10-3896

ERIC H. HOLDER, JR.,

　　　　　　　　　　*Respondent.*

On Petition for Review of an Order of the
Board of Immigration Appeals.

No. A029 111 686.

Argued:  July 19, 2011

Decided and Filed:  October 5, 2011

Before:  ROGERS, McKEAGUE, and DONALD, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:**  Scott E. Bratton, MARGARET WONG & ASSOCIATES CO., LPA, Cleveland, Ohio, for Petitioner.  Papu Sandhu, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Margaret W. Wong, MARGARET WONG & ASSOCIATES CO., LPA, Cleveland, Ohio, for Petitioner. Papu Sandhu, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sat by designation at the time of argument.  Judge Donald became a member of this court on September 10, 2011.

1

—————————

**OPINION**

—————————

ROGERS, Circuit Judge.  Nora Ettienne, a citizen of Trinidad, petitions for review of the Board of Immigration Appeals' denial of her application for cancellation of removal under 8 U.S.C. § 1229b.  The Board, adopting the reasoning of the immigration judge, denied Ettienne's petition on the basis that she had not demonstrated that her United States citizen husband and children would suffer exceptional and extremely unusual hardship as a result of her removal.  Although Ettienne's case is very sympathetic, the explicit preclusion of review of cancellation denials applies notwithstanding her argument that the Board failed to follow its own precedent in this case.  Her petition must therefore be dismissed for lack of jurisdiction.

Ettienne entered the United States for a track-and-field competition in 1987, when she was 16 years old.   Ettienne remained beyond the expiration of her visa, with the goal of winning a college scholarship for track and field.  A United States track coach acted as her caretaker.  Ettienne enrolled in high school in Brooklyn and remained an extremely competitive athlete.

Before college, Ettienne was involved in a marriage fraud scheme in which Thomas Bumpus, a United States citizen, received money to claim to be married to her.  A marriage ceremony occurred in February of 1989, but another woman had represented herself to be Ettienne.  Ettienne and Bumpus only met later, after the spousal petition for permanent residency had been filed.  When Ettienne and Bumpus went to the INS offices for the interview assessing the bona fides of the marriage, both ended up signing affidavits admitting that the marriage was a sham entered into only to procure a green card for Ettienne.  Ettienne contends that her coach, who she claims was domineering and abusive, arranged the fraudulent marriage without her knowledge, and that she only learned the true nature of her petition when she arrived in Philadelphia for the green card interview.

Although Ettienne signed the affidavit admitting to marriage fraud in 1990, no order of removal was issued, and there is no evidence that she had any interaction with immigration authorities for the next decade. Ettienne earned a full athletic scholarship to Michigan State University, where she enrolled in 1991. She participated in the track team and majored in human resources, although she fell three classes short of graduation. Through the track team, Ettienne met Jarion Bradley, a United States citizen. The two married in 1999 and have two sons. Ettienne and Bradley work full-time and own a home. Their sons are strong students and are active in sports and other extracurricular activities.

Ettienne came back onto the immigration authorities' radar sometime around 2001. This may have happened as a result of her efforts to procure permanent residency through her marriage to Bradley. Ettienne filed for adjustment of status based on marriage to a United States citizen in April of 2001, but the request was denied because of Ettienne's involvement in the marriage fraud. Under 8 U.S.C. § 1154(c), a person who has previously attempted to gain permanent residency through a fraudulent marriage is barred from procuring an immigrant visa, regardless of other eligibility. Therefore, even though the validity of Bradley and Ettienne's marriage is not questioned, the marriage cannot provide a basis for Ettienne to achieve permanent residency.

On December 6, 2001, INS issued Ettienne a Notice to Appear, alleging that she was removable for being in the United States without permission, in violation of 8 U.S.C. § 1227(a)(1)(B). The Government later added another ground of removability: participation in marriage fraud, in violation of 8 U.S.C. § 1227(a)(1)(G)(ii). Ettienne contested the marriage fraud allegation, but conceded removability based on her unauthorized presence. She sought relief in two forms: a second spousal petition and a request for cancellation of removal under 8 U.S.C. § 1229b(b)(1).

At a hearing before an immigration judge ("IJ"), Ettienne presented her own testimony along with that of her husband, sons, mother-in-law, and a family psychologist. The testimony fell into two categories: (1) testimony explaining Ettienne's lack of involvement in the fraudulent marriage and (2) testimony as to the extreme effect

Ettienne's deportation would have on the family. Her husband testified that he would not be able to afford their mortgage or student loan payments were he to lose Ettienne's income. He also stated that he was suffering from severe anxiety at the thought of losing his wife, and that he could not imagine life going on were they separated. Bradley also testified that there would be no opportunities for Bradley or the boys in Trinidad. Bradley, a civil engineer, testified that because he is not used to working in the metric system or under other countries' design standards, he doubted he would be able to find engineering work in Trinidad. He also testified that the schools in Trinidad would be nowhere near the quality of those in the United States, and that his sons would miss out on a great many opportunities were the entire family to relocate.

The psychologist, Dr. Hand, also offered testimony about the likely effects of Ettienne's removal on her husband and children. Hand testified that Bradley was already suffering from severe, debilitating anxiety that would only worsen upon Ettienne's removal. He also testified that he believed the older son was clinically depressed as a result of the stress of his mother's potential departure and exhibited signs of obsessive behavior resulting from anxiety. The psychologist further testified that the younger son had regressed to early childhood behaviors the parents had previously believed he had outgrown. Dr. Hand concluded that the regression was a clinically significant reaction to extreme stress. He further testified that if Ettienne were to depart, the boys would develop significant trust issues that would affect not only their personal relationships but also their perception of the fairness and legitimacy of institutions and authority figures. Dr. Hand testified that these effects were more severe than he would expect even under such difficult circumstances. Dr. Hand stated that the effects of the entire family's relocating abroad would be hard to predict, but that a relocation would likely be very damaging if things did not go well in the new country.

The IJ found that Ettienne had participated in marriage fraud. The IJ went on to assess whether Ettienne qualified for cancellation of removal, which allows an otherwise removable alien to remain in the United States because her departure would effect an exceptional and extremely unusual hardship on a citizen parent, spouse, or child. The

IJ found that Ettienne met the first three statutory requirements for cancellation of removal: at least ten years of continuous presence in the United States, good moral character for the statutory period, and lack of certain criminal convictions, 8 U.S.C. § 1229b(b)(1)(A)-(C). However, the judge determined that Ettienne had not satisfied the final requirement—showing that her removal would cause Bradley or the children to suffer more hardship than would normally be expected under the circumstances, 8 U.S.C. § 1229b(b)(1)(D). Because Ettienne could not make the required hardship showing, the IJ denied the petition. The IJ noted that even if Ettienne had demonstrated exceptional and extremely unusual hardship, the IJ would still deny the petition in her discretion due to Ettienne's involvement in marriage fraud.

Ettienne appealed to the BIA, contesting the IJ's marriage fraud and hardship determinations. The BIA declined to address the marriage fraud finding, since Ettienne had conceded removability for being in the country without authorization. The BIA affirmed the IJ's finding that Ettienne had not demonstrated "exceptional and extremely unusual hardship" to Bradley or their children.

Ettienne appealed to this court, and the Government moved for dismissal based on lack of jurisdiction, citing the statutory bar on review of cancellation denials, 8 U.S.C. § 1252(a)(2)(B)(i). On October 12, 2010, a panel denied the Government's motion to dismiss on the grounds that Ettienne had claimed that the BIA failed to follow its own precedent in making the hardship determination. In spite of this ruling, the Government maintains, correctly, that Ettienne's appeal should be dismissed for lack of jurisdiction.

This court may revisit the issue of jurisdiction even after a motions panel has denied a motion to dismiss, *see In re LWD, Inc.*, 335 F. App'x 523, 526 (6th Cir. 2009), and such a course is appropriate here to avoid erroneously exercising jurisdiction over a statutorily barred claim.

Ettienne argues that she is not subject to the statutory prohibition on review of the BIA's denial of cancellation of removal, because the BIA failed to consider all the hardship factors in their totality, as required by the BIA's precedential decision in *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 473 (BIA 2002). This court has interpreted § 1252(a)(2)(B)(i) to permit review of a BIA decision in which the Board allegedly failed to follow its own precedent, *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008), but Ettienne's case is not controlled by that case. This court reviewed Aburto-Rocha's claim by asking whether the BIA had correctly distilled the standard of review embodied by the cases Aburto-Rocha alleged the agency had failed to follow. *Id*. at 504. In contrast, Ettienne argues that the IJ ignored the totality requirement by failing to specifically identify every hardship factor that Ettienne's family would face upon her removal. This is a challenge to the weighing of the evidence that, if accepted, would effectively eliminate the jurisdictional bar on review of denials of cancellation of removal. *Aburto-Rocha* did not purport to invalidate the statutory bar, and we do not read it to do so.

The preclusion of review of cancellation denials does not extend to "questions of law" under 8 U.S.C. § 1252(a)(2)(D), or to "nondiscretionary issues" under a theoretically distinct but largely coterminous exception to the preclusion of review described in *Aburto-Rocha*, 535 F.3d at 503.[1] To determine whether a cancellation-of-removal claim falls within such an exception to the jurisdictional bar, the court must consider what type of analysis would be necessary to evaluate the claim on its merits. Where our decision requires resolution of a contested interpretation of language in the statute or the regulations, the appeal will fall within our jurisdiction. In *Garcia v. Holder*, 638 F.3d 511 (6th Cir. 2011), for example, the petitioner argued that his prior state conviction did not place him under the INA provision making permanent residents convicted of aggravated felonies ineligible for cancellation of removal, 8 U.S.C.

---

[1]After finding jurisdiction over the claim in *Aburto-Rocha*, the court ruled in favor of the Government, 535 F.3d at 505. The Government was therefore unable to seek further review of the case's jurisdictional finding. The jurisdictional analysis thus has some of the attributes of dicta. As Judge Leval has explained, a "weakness of law made through dicta is that there is no available correction mechanism. No appeal may be taken from the assertion of an erroneous legal rule in dictum." Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1262 (2006).

§ 1229b(a)(3). This court readily recognized its jurisdiction to consider the question of "whether Garcia's state drug conviction amounts to an aggravated felony under the INA," which was answered by analyzing the Act, state criminal statutes, and federal case law interpreting the meaning of the term "felony." *Id.* at 514.

Similarly, claims that require an evaluation of whether the BIA adhered to legal standards or rules of decision articulated in its published precedent can raise nondiscretionary "questions of law" that are reviewable by the courts of appeals. For example, the Ninth Circuit exercised jurisdiction over an appeal in which the IJ had erroneously stated that the petitioners were required to demonstrate that their removal would result in an "unconscionable" hardship to their citizen children. *Figueroa v. Mukasey*, 543 F.3d 487, 496 (9th Cir. 2008). The "unconscionable" requirement imposed by the IJ was in clear conflict with a precedential BIA decision that stated: "we do not find that an 'unconscionable' standard is an appropriate one to apply in evaluating a respondent's eligibility for cancellation of removal." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 61 (BIA 2001). Notably, the court was able to determine that the IJ had misconstrued BIA precedent without evaluating the specific hardship factors alleged by Figueroa.

This circuit recently acknowledged its jurisdiction over such claims in *Perez-Roblero v. Holder*, No. 09-3982, 2011 WL 2837433 (6th Cir. July 15, 2011). Perez-Roblero argued that the IJ had erroneously read BIA precedent as establishing two specific rules for evaluating hardship claims—first, that a citizen relative's asthma could not serve as the basis for a hardship determination and second, that the availability of any education in the country of removal, even if minimal, would preclude a hardship finding. *Id.* at *6. To evaluate the petitioner's claim of error, the court analyzed the IJ's opinion and the relevant precedent to determine whether the IJ had in fact extracted the alleged rules from the precedent. *Id.* at *7-8. This analysis did not require the court to

consider whether the IJ had properly considered the medical and educational hardship factors in Perez-Roblero's case.[2]

In contrast, this court lacks jurisdiction over claims that can be evaluated only by engaging in head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions. The BIA will sometimes reach opposite conclusions in cases that have many factual similarities, but this does not reflect a failure of the agency to follow its own precedent. Rather, the different outcomes are an expected result of the discretionary weighing required to make individualized determinations. Review that required a tallying of hardships would amount to second-guessing the agency's weighing of factors, an endeavor that we have repeatedly recognized as beyond our jurisdiction. In the asylum context, for example, this court recognized that it lacked jurisdiction to review the BIA's untimeliness ruling because the Petitioner's claim relied on contesting factual determinations "rather than on statutory construction or a constitutional claim." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006); *see also Alshareqi v. Mukasey*, 295 F. App'x 2, 6 (6th Cir. 2008) (factual determinations not for review in the cancellation context). For the same reason, we lack jurisdiction over claims that the IJ failed to consider or put insufficient emphasis on particular factors in the Petitioner's case. *See Perez-Roblero*, No. 09-3982, 2011 WL 2837433, at *6; *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009).

Ettienne has styled her appeal as a claim that the IJ and BIA failed to weigh the hardship factors in the aggregate, as required by *In re Gonzalez-Recinas*, 23 I. & N. Dec. 467, 472 (2002). Although difficult to imagine, such a claim could conceptually fall within our jurisdiction. If the IJ had identified some standard for evaluating the hardship factors other than cumulative weighing, we could review the argument. But Ettienne does not argue that the IJ misconstrued the standard for reviewing hardship claims. Nor could she credibly do so, as the IJ twice articulated the proper standard. Without a claim

---

[2]Although the opinion in *Aburto-Rocha* discussed some of the particular hardship factors in the petitioner's case, it disposed of the claim not on the basis of factual similarity to any BIA precedent, but rather on the grounds that the BIA had correctly interpreted its precedent in deriving the legal standard under which to analyze Aburto-Rocha's case. 535 F.3d at 504.

that the IJ misunderstood the standard for evaluating hardship, Ettienne is left with the argument that the IJ failed to consider certain facts specific to her case. *See Reyes v. Holder*, 410 F. App'x 935, 938 (6th Cir. 2011); *Farraj*, 316 F. App'x at 400. As explained, such objections to the agency's weighing of the facts is not within our jurisdiction to review, and the petition must be dismissed.

The petition is dismissed for lack of jurisdiction.