NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0362n.06

No. 13-3380

**FILED**
May 13, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RANJIT SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| ERIC H. HOLDER, JR., Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE:     MOORE and ROGERS, Circuit Judges; NIXON, District Judge.[*]

ROGERS, Circuit Judge.  Ranjit Singh, a native and citizen of India who was briefly married to and soon separated from a United States citizen, petitions this court for review of a final order of removal by the Board of Immigration Appeals.  The only aspect of the Board's decision that Singh challenges is its denial of his request for a "hardship waiver" of the joint filing requirements for elimination of conditions on his permanent resident status.  The Board, adopting the reasoning of the immigration judge, denied Singh's request on the ground that he had failed to demonstrate by a preponderance of the evidence that his marriage was entered into in good faith.  Because the ultimate decision to grant a "hardship waiver" is within the discretion of the Secretary of Homeland Security, we lack jurisdiction to review the predominantly factual determination of the Board, under 8 U.S.C. § 1252(a)(2)(B)(ii).  In any event, because the Board

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

determined that Singh and his only other witness were incredible and that none of the documentary evidence Singh provided was probative to the good-faith intentions of the spouses, there is no evidence whatsoever to support Singh's petition. Accordingly, there is no basis for us to reverse the Board's determination.

Singh first arrived in the United States in 1993 to study English. After arriving, he applied for asylum, but that application was aborted when Singh eventually became married and qualified for conditional legal permanent resident status. He initially settled in Burlington, New Jersey, and began working at a gas station in Vineland, New Jersey. He met Jeannette Rivera in February or April of 1995 while at work. They were married on April 1, 1996, after dating for about a year. The couple lived together at a friend's apartment for three or four months before moving into a house in Vineland shortly after the wedding.

Singh returned to India in February 1997, less than one year after the wedding. He did not return to the States for over three years. His explanations for this lengthy excursion to India were various and sketchy. Singh claims that he returned so abruptly in order to take care of his mother, who had fallen ill and had no one else to support her. He also claims that, shortly after arriving in India, he was injured in a serious motorcycle accident, after which he spent 50 days in a hospital. He also claims to have lost his passport and his green card sometime after the accident, when his bag was stolen off of a bus. In addition, his application for a new passport was significantly delayed and prevented his return to the United States. Singh did not receive another passport for two and a half years, during which time he inquired monthly with local bureaucrats. Even after he received his new passport, his return to the United States was further delayed as he arranged for sufficient funds for the trip. Eventually, Singh returned to the United States in August 2000.

During the beginning of his time in India, Singh spoke weekly with Jeanette, who frequently inquired about his return and became distraught about the loss of his travel documents. He last spoke to her in 1998; afterward, her phone was disconnected and she did not respond to messages left by one of his friends. When Singh returned stateside, he still could not locate Jeanette. He placed an advertisement in a newspaper attempting to find her, but he received no response. Unable to locate her, he filed for a divorce, which was finalized in 2005.

In April 2006, Singh was issued a Notice to Appear alleging that he was removable, pursuant to U.S.C. § 1227(a)(1)(D)(i), for being a conditional permanent resident whose conditional status had been terminated. Singh conceded the basis for removability, namely that his conditional status had been terminated for failure to file a joint petition, with his wife, to remove the conditions on his status. However, Singh applied for a waiver of the joint filing requirement for the petition; that application was denied by the U.S. Citizenship and Immigration Services in October 2009, over three years after the first Notice to Appear.

Typically, an alien with conditional permanent status based on marriage to a U.S. citizen may have that condition removed by submitting, jointly with the spouse, a petition to have that condition removed. 8 U.S.C. § 1186a(c)(1). When an alien fails to meet the requirements, such as not being able to provide a submission jointly with the spouse, "[t]he Secretary of Homeland Security, in the Secretary's discretion, may remove the conditional basis" on various grounds. *Id.* § 1186a(c)(4). One of the grounds for such a "hardship waiver," the one that is relevant for this case, is that the alien demonstrates that "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of [§ 1186a(c)(1)]." *Id.* § 1186a(c)(4)(B). In making this determination, the Secretary "shall

consider any credible evidence relevant to the application," but "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Secretary." *Id.* § 1186a(c)(4).

During the pendency of Singh's application for a waiver, the removal proceedings before the immigration judge were continued.[1] In April 2010, the immigration judge finally scheduled a hearing on the merits, to be conducted in April 2011 with a Punjabi interpreter.

In support of his request for a waiver, Singh introduced documentary evidence to attempt to prove that his marriage with Jeannette Rivera was entered into in good faith, including: the final divorce decree, which was entered against Jeannette Rivera as a default judgment and indicated that there were no children from the marriage; an affidavit from Singh in which he attests to the marriage, his trip to India, and his estrangement from his wife; a letter from a property manager indicating that "Ranjit Singh and Jeannette Rivera Singh were tenants . . . from approximately April 1995 until April 1997"; a September 1996 utility bill in the sole name of Jeannette Rivera Singh; a cancellation, dated July 1996, of an insurance policy in Ranjit Singh's name only; an insurance invoice for a policy in Ranjit Singh's name only, dated October 1996; and two 1996 statements from a joint checking account in both Ranjit Singh and Jeannette Rivera Singh's names. In addition, Singh and a friend of his testified at the removal hearing. Both discussed some details about the wedding, the marriage, and Singh's contacts with his wife while in India.

The immigration judge issued an oral decision denying Singh's request for a waiver to remove conditions on permanent resident status, denying a request for voluntary departure, and

---

[1]The hearing was continued on October 27, 2009, apparently because Singh's counsel had not yet received a response regarding a preliminary Notice of Intent to Deny that he had earlier received from the Immigration Services. However, the final decision of the Immigration Services denying Singh's request for a waiver was issued on October 16, 2009, over one week before that continuance.

ordering his removal to India. In assessing the evidence and making findings of fact, the immigration judge noted his skepticism regarding many aspects of Singh's proof. For example, Singh was unable to correctly spell his wife's first name. And whereas Singh testified that no one could be seated at the wedding ceremony and that the reception was at a Holiday Inn, his friend testified that some people could sit at the wedding and that the wedding party was at a small Indian restaurant called the Raj. The judge questioned the severity of Singh's mother's illness that necessitated his abrupt departure to India, because she only stayed in the hospital for one week and she still suffered from the illness at the time of the removal proceedings. In addition, the court noted that Singh failed to provide any corroboration to support any of the facts about his stay in India. The court scrutinized and found wanting Singh's explanations for staying in India for nearly three years, which shifted vaguely during the course of examination from a want of funds to a lack of travel documents. When questioned about some farmland in India from which Singh extracted rent, Singh apparently vacillated about not being able to afford a return ticket or to bring his wife to India. The judge also noted that, whereas Singh stated that he received the new passport in April or May of 2000 and had it for a period of three or four months before scraping together enough money to return to the United States, the passport itself indicates that it was issued in January 2000 and that Singh returned to the United States in August of 2000. Singh failed to corroborate his statement that he had placed a newspaper advertisement to find his wife. The judge also noted that there was a discrepancy between Singh's testimony and the letter from the property manager that stated that the couple lived there from April 1995 to April 1997, because Singh's testimony was that he and his wife moved into the apartment after their wedding in April 1996, and that Singh had left for India many months before April 1997. Singh was unable to remember the names of his wife's parents or of two of

her children that apparently lived with them for some time.  The judge concluded that Singh had prevaricated, that Singh had presented a witness he knew would prevaricate, that none of the documents were credible, that there was no credible testimony about the wedding ceremony, and that "there is absolutely no evidence that the respondent had a bona fide relationship or marriage."

The Board of Immigration Appeals affirmed the decision of the immigration judge.  The Board agreed that Singh had failed to demonstrate by a preponderance of the evidence that his marriage had been entered into in good faith.  The Board agreed with the immigration judge that Singh had not presented sufficient documentary evidence to substantiate the marital relationship and that both Singh and his witness lacked credibility, due in part to discrepancies between their testimony and the documentary evidence.  The Board also emphasized that Singh had failed to corroborate any of his various explanations for remaining in India for three years despite an avowed intent to reunite with his wife.  The Board concluded that Singh's non-probative and incredible evidence failed to establish that he had entered into marriage in good faith.  This petition for review followed.

Because Singh's challenge to the Board's order is predominantly factual, we lack jurisdiction to review the Board's decision.  Under the immigration statutes and Sixth Circuit precedent, we lack jurisdiction to review factual issues, such as whether a marriage was entered into in good faith, that undergird a decision that is statutorily placed in the discretion of the Attorney General.  The statutory scheme establishing the scope of judicial review for orders of the Board provides that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland

Security." 8 U.S.C. § 1252(a)(2)(B)(ii). This preclusion of review clearly applies to the Board's determination in this case. Under the statutory provision governing "hardship waivers" the decision whether to grant a waiver is vested "in the Secretary's discretion."[2] Therefore, we generally lack jurisdiction to review a decision denying this type of hardship waiver.

The narrowly construed exception that grants the circuit courts jurisdiction to review legal questions does not provide Singh a foothold upon which to gain jurisdiction. Despite the jurisdiction-stripping provision, this court retains jurisdiction to review "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). As we have held, this applies to pure legal issues such as questions of statutory construction. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). For example, in *Almuhtaseb*, the court held that it lacked jurisdiction to consider a petitioner's challenge to the Board's finding that there were no "changed circumstances," because that determination was "predominantly factual." *Id.* In *Ettienne v. Holder*, 659 F.3d 513, 518 (2011), we applied the preclusion of jurisdiction over factual issues to quasi-legal arguments based on factual comparisons between a case and precedential decisions interpreting statutes. These holdings are controlling here. Both *Almuhtaseb* and *Ettienne* interpreted the same preclusion of review and the same exceptions for legal issues as are applicable in this case, albeit to different types of decisions that the statutes place within the Attorney General's discretion. *See Almuhtaseb*, 453 F.3d at 746–48 (whether changed circumstances justify consideration of untimely asylum petition); *Ettienne*, 659 F.3d at 517 (whether sufficient hardship justifies cancelation of removal). The difference in the underlying discretionary determination that the alien is challenging has no logical effect on the proper interpretation of the scope of the commonly applicable preclusion of review.

---

[2]In addition "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Secretary." 8 U.S.C. § 1186a(c)(4).

Nonetheless, we have recognized at least a limited form of substantial-evidence review in a nearly identical case, when the petitioner challenged the Board's decision that she was ineligible for a hardship waiver because she could not prove that her marriage was in good faith. *Johns v. Holder*, 678 F.3d 404, 406 (6th Cir. 2012). In *Johns*, we reasoned that "nothing indicates that Congress meant to divest courts of appeals of their longstanding authority to conduct substantial-evidence review," but acknowledged that the scope of that review was substantially narrowed because "we . . . must accept the Board's decisions about the weight and credibility of the evidence." *Id.* at 407. It ultimately makes no difference to our conclusion in this case whether or not we employ *Johns*'s limited version of substantial-evidence review because the immigration judge found that Singh, his witness, and his documentary evidence lacked credibility. He has no remaining evidence to support his claim of good faith.

Singh does not argue that the Board employed the wrong standards to assess the bona fides of the marriage, that it considered factors that are legally irrelevant to its assessment, or that it overlooked a crucial consideration dictated by statute or precedent. Rather, all of his arguments are at their core challenges to the Board's factual determination that the marriage was not entered into in good faith. Because the judge identified the proper legal standard, any argument about the aggregate effect of evidence is effectively a challenge to the weighing of evidence. Accordingly, we can grant Singh no relief.

For the foregoing reasons, Singh's petition for review is DISMISSED.