**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0140n.06

No. 18-3493

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MIGUEL VILLAFANA QUEVEDO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | On Petition for Review from |
| v. | ) | the United States Board of |
| | ) | Immigration Appeals |
| WILLIAM P. BARR, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| _____/ | | |

FILED
Mar 22, 2019
DEBORAH S. HUNT, Clerk

Before: MERRITT, GUY, and MOORE, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge**. Miguel Villafana Quevedo, a native and citizen of Mexico, petitions for review of the denial of his application for discretionary cancellation of removal. The Board of Immigration Appeals (BIA) agreed with the determination of the Immigration Judge (IJ) that petitioner was not eligible for cancellation of removal because he had not demonstrated that his removal to Mexico would result in "exceptional and extremely unusual hardship" to his United States citizen children. Because the BIA applied the correct legal standards and this court does not have jurisdiction to review the BIA's weighing of the facts in making the hardship determination, Quevedo's petition for review is **DENIED** in part and **DISMISSED** in part.[1]

---

[1]Petitioner is referred to as "Quevedo," although his name also appears in the record as "Villafana," "Quevedo," and "Villafana-Quevedo."

**I.**

Quevedo was served with a Notice to Appear in March 2014. He appeared, conceded the charge of removability, and applied for discretionary cancellation of removal or, in the alternative, voluntary departure to Mexico. To be eligible for cancellation of removal, an alien has the burden to demonstrate: (1) continuous presence in the United States for not less than 10 years immediately preceding his application; (2) good moral character during that period; (3) that he has no disqualifying convictions; and (4) that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Because there was no dispute that Quevedo satisfied the first three of these requirements, his eligibility for cancellation of removal depended on establishing the fourth.

At the merits hearing on May 2, 2016, the IJ received documentary evidence and heard what she found to be credible testimony from petitioner, his wife, and their eldest daughter concerning his "relationship with his children and their dependency on him, the impact of his removal on his family, and the effects of [his] past drinking." The IJ found that Quevedo was born in Mexico on May 23, 1973, and that he was 18 years old when he entered the United States without inspection on or about January 1, 1992. Petitioner returned to Mexico twice to visit family for two-weeks each time (1995 and 2003). He married his wife Isidra, also an undocumented alien from Mexico, on August 9, 1997. Together they have three United States citizen children: a daughter named Maribel born in 1998; a son named Juan Diego born in 2003; and a daughter named Maria born in 2007. Petitioner also has an older daughter from a different relationship named Hesbeyda born in 1997, who lived with her mother and stopped receiving child support from Quevedo when she reached 18 years of age. Petitioner acknowledged that Hesbeyda could

apply for a visa for him once she turned 21, but said he was not sure if she would because they were not very close. Although Hesbeyda is a United States citizen, there was no evidence offered that she would suffer any particular hardship if petitioner was removed to Mexico.

Petitioner has two drunk driving convictions (2002 and 2007), three citations for driving without a license or with an expired license (1992, 1995, and 2010), and a dismissed domestic violence assault charge (2008). His drinking caused marital problems that resulted in a separation from his wife for two-and-a-half years beginning in 2007. Although petitioner was living in another state during that separation, the witnesses all testified that he called their children every night and continued to provide financial support by sending approximately $400 on a regular basis. Petitioner testified that he stopped drinking on his birthday in 2008, reconciled with his wife in 2009, and has lived in Michigan with his wife and their children since then. Quevedo does not drink at all, is a regular churchgoer, and is the primary source of income for his family.

At the time of the hearing, Quevedo had been employed for two years trimming trees and spreading mulch and was earning approximately $800 per week. The record includes a favorable letter from his employer and copies of his tax returns. Petitioner's removal would result in the loss of the family's financial support, as his wife was not working outside the home except to clean houses once or twice per month. Isidra testified that she was not working regularly because she gets "strong headaches," which had caused her to lose her last job at an apple packing plant. Isidra added that if her husband is removed to Mexico, she would have to go to work and their eldest daughter Maribel would not be able to continue going to school. Maribel, who was a senior in high school at the time of the hearing, testified that she wanted to attend a nearby college but would have to work instead to help support the family if her father were deported. Maribel said that she

and her siblings were healthy, although her mother testified that Maribel experienced frequent pain that doctors had been unable to diagnose.

Quevedo has a close relationship with the three children he shares with his wife, spending time with them and helping them with their homework. By all accounts, the children would miss their father greatly if he were deported and they would not accompany him to Mexico. Maribel testified that she has had a lot of personal conversations with her father, confirmed that she spoke with him every day during her parents' separation, and said she felt "broken" when she was only able to speak with him a few times during the two weeks that he was in immigration custody in March 2014. She said her brother Juan Diego was also "pretty bad," and that her younger sister Maria became depressed during their father's immigration detention and lost a year in school as a result. Petitioner and his wife feared that Maria could go into another depression if her father is removed to Mexico. The IJ found the testimony of all three witnesses to be credible, while noting that no documentation was provided to corroborate Isidra's claims concerning her headaches, Maribel's reported pain, or Maria's episode of depression.

The IJ's written decision issued on June 20, 2017, summarized the facts, identified the appropriate legal standards, and found that petitioner's children would suffer hardship from both the loss of financial support from the family's sole provider and the loss of the parental relationship with their father. The IJ concluded, however, that the hardship to petitioner's family was "not substantially beyond the ordinary hardship that would be expected when a close family member leaves the country." Petitioner appealed to the BIA, arguing that the IJ had improperly weighed the hardship to Maria, who "was affected with depression when he was taken into custody and ultimately had to be held back a grade," and Maribel, who "would have to give up going to college to make money for her family." The BIA agreed with the IJ's hardship determination and

concluded that "while [Quevedo]'s removal would adversely affect his family, the level of hardship falls short of the exceptional and extremely unusual standard set forth in [§ 1229b(b)(1)(D)]." The BIA dismissed the appeal on May 2, 2018, and this petition for review followed.

## II.

When, as here, the BIA issues a separate order, our focus is on the agency's final decision although we also look to the IJ's reasoning to the extent it was adopted. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Before we can turn to the petition, however, Quevedo's appeal faces a not insubstantial hurdle. Namely, this court lacks jurisdiction to review a discretionary denial of cancellation of removal under § 1229b, but we retain jurisdiction to review "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(B)(i) and (D); *Ettienne v. Holder* 659 F.3d 513, 517-18 (6th Cir. 2011); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008).

This means that we may review a denial of cancellation claim when it involves "a contested interpretation of language in the statute or regulations" or requires "evaluation of whether the BIA adhered to legal standards or rules of decision articulated in its published precedent." *Ettienne*, 659 F.3d at 517. However, we may not review a denial of cancellation of removal when the claim "can be evaluated only by engaging in head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions." *Id.* at 518. "Such arguments are outside of our jurisdiction because differing outcomes on factually similar cases 'are an expected result of the discretionary weighing required to make individualized determinations,' so 'review that required a tallying of hardships would amount to second-guessing the agency's weighing of

factors.'" *Leon-Leon v. Lynch*, 652 F. App'x 342, 346 (6th Cir. 2016) (quoting *Ettienne*, 659 F.3d at 518) (alterations omitted).

Cognizant of our limited jurisdiction, Quevedo understandably frames his appeal as a claim that the BIA misapplied its own precedent and failed to adhere to the applicable legal standards in assessing the hardship factors. He does not dispute, however, that the IJ and BIA articulated the correct legal standards, including that "exceptional and extremely unusual hardship" must be "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." *In re Monreal-Aguinaga*, 23 I & N Dec. 56, 61-62 (BIA 2001). As the BIA's precedent instructs, the IJ recognized that the factors to be considered include the ages, health, and circumstances of the qualifying relatives; family and community ties in the United States and abroad; and any adverse country conditions in the country of return. *See id.* at 63. The factors must be "considered in the aggregate," but factors relating to the alien "can only be considered insofar as they may affect the hardship to a qualifying relative." *Id.* at 63-64; *see also In re Gonzalez Recinas*, 23 I & N Dec. 467, 473 (BIA 2002); *In re Andazola-Rivas*, 23 I & N Dec. 319, 323-24 (BIA 2002).

Quevedo contends that we have jurisdiction over his claim that the IJ identified two broad categories of economic and emotional hardship in its conclusions without mention of the possibility that his youngest daughter's depression might recur if he were removed, the testimony that his older daughter would likely have to forego college to work to support the family in his absence, or that his wife had not worked regularly due to reportedly severe headaches. The record shows, however, that the IJ detailed, credited, and considered these factors in weighing the hardship that would result to his qualifying relatives. Moreover, the BIA also expressly considered these factors, emphasizing that the children were healthy and would not accompany him to Mexico

if he is removed; that petitioner had maintained contact with his children by phone during the two-year marital separation; and that there was no evidence that his youngest daughter, who had become depressed during petitioner's immigration detention and held back a grade, had experienced any further issues. The BIA acknowledged that Isidra had not worked regularly due to headaches, but also added that there was no evidence that she could not work more if petitioner is removed. Weighing the economic and emotional hardship to petitioner's qualifying children if he is removed to Mexico, the BIA concluded that the record did not demonstrate that the hardships would be disproportionately severe or of a type that "may fairly be characterized as 'exceptional and extremely unusual' in the sense intended by Congress."

In contesting the BIA's discretionary determination that the hardship that would result was not "exceptional and extremely unusual," Quevedo has not demonstrated a failure to adhere to the BIA's legal standards or rules of decision. Instead, he makes the fact-based claim that the BIA failed to properly weigh the hardships that his children will experience if he is separated from them and removed to Mexico. That, however, is beyond our jurisdiction to review.

Accordingly, the petition for review is **DENIED** in part and **DISMISSED** in part.

**MERRITT, Circuit Judge, Dissenting**.  After a thorough review of the record below, I cannot bless the Immigration Judge and the Board's application of this difficult legal standard to this family.  Even within the scope of our review, the factual errors the Board and the Immigration Judge made rise to errors of law.  The Second Circuit's approach in such cases is instructive. *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (McLaughlin, Calabresi, and Sotomayor, Circuit Judges) ("[W]here, as here, some facts important to the subtle determination of 'exceptional and extremely unusual hardship' have been totally overlooked and others have been seriously mischaracterized, we conclude that an error of law has occurred."); *see also Tobar-Bautista v. Sessions*, 710 F. App'x 506 (2d Cir. 2018) (granting petition and remanding on similar facts to the instant case).

The pertinent section of the Immigration Judge's order—the hardship analysis—completely ignores major issues in the case and barely comprises a full page.  For example, the Immigration Judge found all the witnesses credible but then ignored their testimony entirely.  That testimony showed many medical problems within this family:  petitioner's daughter's depressive episode, petitioner's wife's chronic headaches, and petitioner's other daughter's chronic pain.  The witnesses were telling the unrebutted truth.  Totally overlooking that testimony renders the process afforded petitioner meaningless.

There was also evidence that petitioner's daughters would face reduced educational opportunities if petitioner were removed.  The Immigration Judge cursorily said that because the children would remain in the United States, "the effects of relocation . . . would not be a hardship." Just because educational opportunities may be better here than in Mexico does not mean that these children will not experience hardship.  The evidence showed that the diminishment of educational opportunities *within this country* would be extreme: one daughter testified that she will forego

higher education to support her family if her father is removed. The inquiry requires the Immigration Judge to measure the hardship to citizen-children wherever they reside. We disfavor imposing extreme hardships on citizen-children for sins their parents may have committed, and higher education is an important means of increasing earning capacity. *See generally Plyler v. Doe*, 457 U.S. 202, 222 (1982) ("Paradoxically, by depriving the children of any disfavored group of an education, we foreclose the means by which that group might raise the level of esteem in which it is held by the majority."). Here the children are not a disfavored group but citizens.

As stated in *Mendez*, I am "not confident that, after taking the overlooked evidence into account and describing it accurately, the agency would come to the conclusion that Petitioner has not met the standard of 'exceptional and extremely unusual hardship.'" 566 F.3d at 323. I would remand this case back to the Board of Immigration Appeals to reconsider the facts that were overlooked.