NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0342n.06

No. 18-3818

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DANIEL VALDEZ-ARRIAGA,

     Petitioner,

v.

WILLIAM P. BARR, Attorney General,

     Respondent.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 05, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: WHITE, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. An Immigration Judge (IJ) denied Daniel Valdez-Arriaga's application for cancellation of removal under 8 U.S.C. § 1229b(b)(1). The IJ found that Valdez-Arriaga had failed to satisfy three of § 1229b(b)(1)'s requirements: (1) ten years' continuous physical presence in the United States; (2) good moral character during that period; and (3) "exceptional and extremely unusual hardship" to his qualifying United States citizen relatives resulting from his removal. The BIA affirmed the IJ's denial of relief on continuous-presence and hardship grounds, and Valdez-Arriaga petitioned for review. We lack jurisdiction, however, to review Valdez-Arriaga's fact-bound challenge to the agency's hardship determination, and that determination was not otherwise legally erroneous. Therefore, Valdez-Arriaga cannot establish eligibility for relief under § 1229b(b)(1), and we must deny his petition for review.

I.

A native and citizen of Mexico, Valdez-Arriaga testified that he entered the United States in 2000 when he was seventeen. Once inside the country, he traveled to Dayton, Tennessee, where

he worked in agriculture. Valdez-Arriaga attested that he has five children who are United States citizens. He resided with his youngest child, Xitlali, who was born in 2016, and her mother Beatriz Ponce-Gonzalez. Xitlali was born prematurely and has heart and mobility issues. His other four children live with their respective mothers, but Valdez-Arriaga has provided them with financial assistance and has been active in their lives.

In December 2012, the Department of Homeland Security (DHS) filed a Notice to Appear (NTA) in Immigration Court, charging Valdez-Arriaga with removability as an alien present in the United States without admission under 8 U.S.C. § 1182(a)(6)(A)(i). In June 2016, Valdez-Arriaga conceded the charge of removability in the NTA—that he had entered the country illegally—but filed an application for cancellation of removal for nonpermanent residents under 8 U.S.C. § 1229b(b)(1). To qualify for cancellation of removal, Valdez-Arriaga was required to establish that (1) he had been continuously present in the United States for ten years immediately preceding his application, (2) he had been "a person of good moral character" during that time, (3) he had not been convicted of any specified crimes, and (4) his removal would cause "exceptional and extremely unusual hardship" to his qualifying United States citizen relatives. 8 U.S.C. § 1229b(b)(1)(A)–(D).

An IJ held a hearing on Valdez-Arriaga's application in August 2017. Valdez-Arriaga submitted documentary evidence in support of his application, and both he and Ponce-Gonzalez testified. Following the hearing, the IJ denied the application for cancellation of removal but granted Valdez-Arriaga voluntary departure.

The IJ gave three independently sufficient reasons for denying the application. First, the IJ held that Valdez-Arriaga had provided inadequate evidence to establish his continuous physical presence in the United States since 2002—i.e., ten years before DHS commenced removal

proceedings against him by issuing the NTA.[1]   Second, the IJ found that Valdez-Arriaga's extensive criminal history showed that he had lacked the requisite good moral character during his residence in the United States.   The IJ emphasized, in particular, Valdez-Arriaga's recent misconduct, which included charges for driving under the influence, driving without a license, and vandalism.   The IJ held that this recent criminal history, coupled with Valdez-Arriaga's prior offenses, meant that he had not met his burden of establishing good moral character.

Third, and finally, the IJ denied Valdez-Arriaga's application because he had not shown that his removal would cause "exceptional and extremely unusual hardship" to his qualifying United States citizen children.   The IJ noted that Valdez-Arriaga had testified that all his children would remain in the United States, which "lessens the hardship to the children to some degree." And although the children would "lose the care and comfort of their father" and "there will be undoubtedly some economic hardship," these consequences are "expected when someone is removed from the United States" and "do not rise to the level of an exceptional or extremely unusual hardship." Regarding the health problems of Valdez-Arriaga's youngest child, Xitlali, the IJ carefully reviewed the documentary evidence of her medical history but concluded that "there simply is insufficient evidence in the record for the court to find that [her] medical hardship would be an exceptional or extremely unusual hardship" and "that the hardship that she will experience is offset by the fact that she will remain in the United States and can continue to get treatment by the doctors that she sees."

Valdez-Arriaga appealed to the BIA, challenging the IJ's continuous-presence, good moral character, and hardship decisions.  The BIA dismissed the appeal, concluding that the IJ had not

---

[1] To determine eligibility for relief under § 1229b(b)(1)(A), "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear."  8 U.S.C. § 1229b(d)(1).

erred in its continuous-presence and hardship determinations.[2] Regarding continuous presence, the BIA highlighted the "numerous reasons why the documentary evidence is insufficient to corroborate [Valdez-Arriaga's] claimed continuous presence in the United States." The BIA also thoroughly reviewed the evidence supporting Valdez-Arriaga's hardship claim. The BIA considered the "financial impact" of removal, the "emotional hardship" it would cause, and "the health needs" of Valdez-Arriaga's youngest daughter. The BIA concluded that, "[c]onsidering the record in its entirety, . . . [Valdez-Arriaga] has not shown that his removal would cause hardship to any of his qualifying relatives that 'is substantially different from, or beyond, that which would normally be expected' as a result of removal."[3]

Valdez-Arriaga timely petitioned for review.

## II.

Where, as here, the BIA reviews an IJ's decision and issues its own opinion, rather than summarily affirming the IJ's decision, we review the BIA's opinion. *Raja v. Sessions*, 900 F.3d 823, 826–27 (6th Cir. 2018). But we also review the IJ's reasoning to the extent the BIA has adopted it. *Id.* at 827.

Valdez-Arriaga raises two challenges to the BIA's denial of his appeal. First, he argues that the BIA erred in concluding that he had not established the requisite ten years' continuous physical presence in the United States. Second, Valdez-Arriaga claims that the BIA violated his due process rights by misapplying its precedent to conclude that he had not made the requisite

---

[2] Because the continuous-presence and hardship determinations were each independently dispositive of Valdez-Arriaga's claim, the BIA found that it was "not necessary to reach the [IJ's] determinations regarding good moral character."

[3] The BIA also declined to reinstate Valdez-Arriaga's voluntary departure period because he failed to submit timely proof that he had paid the required bond. Valdez-Arriaga has not petitioned for review of this decision.

showing of hardship. The government responds that this court lacks jurisdiction to sustain Valdez-Arriaga's challenge to the BIA's hardship determination and that this dooms the petition for review. We agree.

Federal law limits our authority to review cancellation-of-removal denials. In fact, Congress has provided that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [§] 1229b." 8 U.S.C. § 1252(a)(2)(B)(i). There are, however, two exceptions to this jurisdictional bar. We retain jurisdiction to review (1) constitutional issues or questions of law, *see id.* at § 1252(a)(2)(D); and (2) nondiscretionary decisions underlying the denial of cancellation of removal, *see Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008).[4]

The result of these jurisdictional limitations is that we cannot entertain the argument that the BIA or the IJ ought to have weighed the evidence differently. This sort of challenge "to the agency's weighing of the facts is not within our jurisdiction to review." *Ettienne*, 659 F.3d at 519; *id.* at 518 (rejecting challenge to cancellation denial because it "would amount to second-guessing the agency's weighing of factors, an endeavor that we have repeatedly recognized as beyond our jurisdiction" in this context).

No doubt aware of the jurisdictional bar, Valdez-Arriaga styles his challenge to the agency's hardship determination as raising a legal question—namely, that the agency misapplied its published precedents. But even if we were to accept this framing, Valdez-Arriaga's claim lacks merit. The only BIA precedent allegedly violated is *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56,

---

[4] Although our precedents refer to the "nondiscretionary issues" exception to the jurisdictional bar, it is worth noting that the exception appears "largely coterminous" with the exception for "questions of law" under § 1252(a)(2)(D). *See Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011).

63–64 (B.I.A. 2001), the BIA's seminal decision developing the standard for what constitutes "exceptional and extremely unusual hardship" under § 1229b(b)(1)(D). *Monreal-Aguinaga* established an onerous standard: "the hardship to an alien's relatives . . . must be 'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country. Cancellation of removal . . . is to be limited to 'truly exceptional' situations." *Id.* at 62. In assessing whether hardship rises to this level, it is necessary to "consider the ages, health, and circumstances of qualifying . . . United States citizen relatives"—here, Valdez-Arriaga's five children—and all these "factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship." *Id.* at 63–64.

Valdez-Arriaga suggests that the agency violated *Monreal-Aguinaga* by failing to consider the relevant hardships in the aggregate and by "failing to consider [his] argument concerning the nature of single-parenting of a handicapped child." But the BIA expressly made its hardship determination "[c]onsidering the record in its entirety" and cited *Monreal-Aguinaga*. Moreover, the BIA acknowledged that "[t]he infant child [would] naturally experience hardship as her mother . . . transitions to being the primary caretaker and financial provider[,] . . . particularly considering that [Valdez-Arriaga] is currently the primary wage-earner for the household." And the BIA likewise considered the "health needs of . . . [Xitlali], including a heart condition, kidney and lung problems, and a problem with her hips that prevents her from walking." Yet the BIA concluded that "there is no indication that these conditions will be exacerbated by the respondent's removal." The BIA also found no clear error in the IJ's conclusions on this point, which included the finding that "the hardship that [Xitlali] will experience is offset by the fact that she will remain in the United States and can continue to get treatment by the doctors that she sees, and that [Valdez-Arriaga's] lack of financial support and lack of family support" would affect Xitlali's upbringing

but should not affect "the medical hardships that she may or may not have." In sum, the contention that the agency failed to consider the relevant issues or apply the standard required by *Monreal-Aguinaga* is baseless. And as explained above, we do not have jurisdiction to second-guess "the agency's weighing of the facts." *Ettienne*, 659 F.3d at 519.

Because we lack jurisdiction to overturn the BIA's hardship determination, Valdez-Arriaga cannot demonstrate his eligibility for cancellation of removal under § 1229b(b)(1). We need not address, therefore, his additional claim of error regarding the continuous-presence requirement. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Al-Saka v. Sessions*, 904 F.3d 427, 432 (6th Cir. 2018) (declining to reach a statutory question where it "would make no difference to [the petitioner] either way").[5]

\* \* \*

For the foregoing reasons, we DENY the petition for review.

---

[5] Valdez-Arriaga has filed a motion to reopen with the BIA, arguing in part that, under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), his NTA was defective and did not trigger the end of his continuous physical presence in the United States. Although Valdez-Arriaga's motion to reopen and his *Pereira*-based claim plainly implicate the continuous-presence issue, they are not subject to this petition for review.