RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALFREDO MONTANEZ-GONZALEZ,

> *Petitioner,*

*v.*

ERIC H. HOLDER, JR.,

> *Respondent.*

No. 13-4276

On Petition for Review of a Decision of
the Board of Immigration Appeals.
No. A089 080 741.

Decided and Filed: March 12, 2015

BEFORE: GIBBONS and STRANCH, Circuit Judges; REEVES, District Judge[*]

_____

**COUNSEL**

**ON BRIEF:** Andrea J. Ferrara, Roseville, Michigan, for Petitioner. Andrew N. O'Malley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge. Alfredo Montanez-Gonzalez, a native and citizen of Mexico, seeks review of a decision of the Board of Immigration Appeals (BIA), affirming the decision of the Immigration Judge (IJ) denying his application for cancellation of removal. The IJ denied Montanez-Gonzalez's application on the grounds that he had established neither his

_____
[*]The Honorable Pamela L. Reeves, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

continuous presence in this country nor the degree of hardship to his citizen relatives required for cancellation of removal, and the BIA affirmed on the hardship ground. Montanez-Gonzalez contends that the BIA failed to follow its own precedent and failed to correct constitutional errors in the IJ's procedure, along with other arguments over which we lack jurisdiction. Because the BIA did, in fact, follow its own precedent and Montanez-Gonzalez cannot show constitutional injury, we deny the petition for review on those issues and dismiss the petition with regard to those issues over which we lack jurisdiction.

## I. BACKGROUND

Montanez-Gonzalez was born in a small town in Zacatecas, Mexico. He entered the United States without inspection in 1997 and has primarily lived here since. He returned to Mexico in 2001 to marry his wife and brought her back to the United States. Montanez-Gonzalez and his wife lack lawful status, but they have three daughters, ages five, nine, and thirteen, who were born in this country and therefore have United States citizenship. The family lived in Michigan near his wife's father, stepmother, brother, and the brother's family. The Montanez-Gonzalez children are close with their extended family, who live nearby, and they have never been to Mexico. The eldest daughter excels in school and testified that she wants to be a doctor when she grows up. Montanez-Gonzalez's parents remain in Zacatecas, as do members of his wife's extended family.

Montanez-Gonzalez was placed in removal proceedings in early 2009 and applied for cancellation of removal, pursuant to INA § 240A(b), 8 U.S.C. § 1229b(b). At a hearing, he presented evidence about rampant gang violence and limited educational opportunities in Zacatecas, as well as concerns about his ability to provide for his children should he be removed. He also sought the introduction of a late exhibit which purported to show that his middle daughter was diagnosed with lead poisoning causing injury to her legs. The exhibit stated that the daughter "has been requested by Dr. Perla to see an orthopedic specialist. She has had an elevated lead level and an appointment has been made."

The IJ denied Montanez-Gonzalez's application for cancellation of removal on two grounds—first, that he had failed to establish sufficient continuous residency to be eligible for relief and second, that he had not established that his removal would create the requisite hardship

for his citizen children.  He appealed to the BIA, which affirmed the denial on only the hardship ground.  Montanez-Gonzalez filed this petition for review, as well as two motions to stay his removal.  Both motions for a stay were denied, and he was removed on October 31, 2014.  The government contends that we lack jurisdiction over his petition.

## II.  DISCUSSION

Congress created cancellation of removal as a discretionary form of relief in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, P.L. 104-208, 110 Stat. 3001, replacing an earlier form of relief called suspension of deportation.  To be eligible for cancellation of removal, the alien must satisfy four requirements:  (1) continuous physical presence for at least ten years; (2) good moral character; (3) not having been convicted of certain crimes; and (4) that the removal would result in "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1).  Even for an alien who meets these requirements, cancellation of removal is a discretionary form of relief, meaning that the IJ will grant relief only if the alien warrants a favorable exercise of discretion.  *See Matter of M-L-M-A-*, 26 I. & N. Dec. 360, 364 (BIA 2014) (considering the analogous discretionary nature of § 1229b(b)(2)).

The Immigration and Nationality Act starkly limits our jurisdiction to review a decision not to grant cancellation of removal:  "[N]o court shall have jurisdiction to review—any judgment regarding the granting of relief under … [8 U.S.C. §] 1229b."  8 U.S.C. § 1252(a)(2)(B)(i).  We retain jurisdiction, however, to consider "constitutional claims or questions of law."  8 U.S.C. § 1252(a)(2)(D).  Any such claims must have been administratively exhausted, that is, presented to the BIA in the first instance.  8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).

Montanez-Gonzalez's first claim is that the BIA and IJ failed to follow the legal standards or rules of decision articulated in the BIA's own binding precedent in determining that his daughters would not experience "exceptional and extremely unusual hardship" as a result of his removal.  *See* 8 U.S.C. § 1229b(b)(1)(D).  We have jurisdiction to consider such an argument as a non-discretionary question of law.  *See Ettienne v. Holder*, 659 F.3d 513, 517–18 (6th Cir.

2011).  This jurisdiction does not extend to "claims that can be evaluated only by engaging in head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions." *Id*. at 518.  Such factual analysis would be an impermissible "second-guessing the agency's weighing of factors." *Id*.

In *Matter of Monreal*, 23 I. & N. Dec. 56 (BIA 2001), the first case considering cancellation of removal, the BIA developed the standard for identifying "exceptional and extremely unusual hardship."  The Board first noted that Congress had chosen a higher hardship standard than the earlier "extreme hardship" standard, and discussed interpretations of "exceptional and extremely unusual hardship" under prior versions of the Act.  23 I. & N. Dec. at 59–60.  Finding the suspension of deportation cases not determinative, the BIA focused on the 1996 statutory language and legislative history.  *Id*. at 62. The BIA determined that "exceptional and extremely unusual hardship" must be "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country" but that the standard, "although high, is clearly less than 'unconscionable.'" *Id*. at 61–62.  To determine the degree of hardship, the IJ must "consider the ages, health, and circumstances of qualifying … United States citizen relatives," including "family ties in the United States and abroad … [and] the political and economic conditions in the country of return." *Id*. at 63.  "Factors relating to the applicant himself or herself can only be considered insofar as they may affect the hardship to a qualifying relative." *Id.*  The factors must be "considered in the aggregate." *Id*. at 64.

Montanez-Gonzalez contends that the BIA and IJ did not follow *Monreal* because they employed an improper balancing approach to the hardship determination and ignored evidence of violence in Zacatecas, Mexico that would impose hardship on the citizen children.  He argues that the IJ's use of the introductory phrase "on balance" is evidence of balancing the hardship factors, rather than considering them in the aggregate.  The BIA properly rejected this argument. The IJ's decision does not show that he identified significant hardships on certain factors but found those hardships outweighed by other factors.  Instead, the IJ properly examined the consequences of removal for the citizen children and found that the hardship presented did not reach the level required under the statute.

Montanez-Gonzalez next contends that the IJ and BIA imposed an inappropriately high standard for adverse country conditions. The IJ determined that the evidence of risk of violence was too general to show that Montanez-Gonzalez and his family "would be moving directly into what would be the equivalent of a warzone." Though inartfully stated, the BIA affirmed, restating the standard to hold that Montanez-Gonzalez "has not sufficiently shown that his children would be left unprotected from harm or exposed to violence in Mexico." Montanez-Gonzalez did present general evidence about gang violence in his home region in Mexico, as well as more specific testimony about the gruesome murder of a cousin and threats to his mentally ill brother-in-law. There is no reason to believe that the IJ failed to consider this evidence. And we lack jurisdiction to second-guess the BIA's judgment call about whether the evidence was sufficient to show that removal would place Montanez-Gonzalez's three citizen daughters in danger.

On a different tack, Montanez-Gonzalez contends that he was deprived of his due process right to a fair hearing because the IJ did not consider evidence about potential medical hardship for his middle daughter. "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). The government contends that Montanez-Gomez had no constitutionally protected interest in the discretionary relief of cancellation. "While it is true that the failure to be granted discretionary relief does not amount to a deprivation of liberty interest, we have also held that the Fifth Amendment's Due Process Clause mandates that removal hearings be fundamentally fair and that a petitioner is entitled to a full and fair hearing." *Abdallahi v. Holder*, 690 F.3d 467, 472–73 (6th Cir. 2012) (internal quotation marks, citations, and alterations removed); *see also Gordillo v. Holder*, 640 F.3d 700 (6th Cir. 2011) (considering an ineffective-assistance claim, grounded in constitutional due process, arising from a denial of discretionary NACARA relief). The discretionary nature of certain forms of relief does not eliminate the constitutional requirement of a fair hearing for all aliens facing removal.

For Montanez-Gonzalez to succeed on his constitutional claim, he must show that "there was a defect in the removal proceeding, and if so, [that he] was prejudiced by the defect." *Id.* at 472. "A showing of prejudice is essentially a demonstration that the alleged violation affected

the outcome of the proceedings." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). Montanez-Gonzalez cannot show that he was prejudiced. After the close of evidence, he orally moved to introduce a letter from his daughter's pediatrician's office noting that she had an elevated lead level and an appointment with an orthopedic specialist. Even if the IJ's refusal to allow the letter into evidence was a constitutional defect, he would not be able to establish prejudice. Although the IJ noted that the letter was "preliminary [and] speculative" and would therefore not have affected the hardship determination, he specifically noted the letter and the claim of elevated lead levels in the course of announcing his oral decision. Even if Montanez-Gonzalez has shown a defect—a question we do not decide—exclusion of the letter did not affect the outcome. The due process argument therefore lacks merit.

Finally, Montanez-Gonzalez raises claims that challenge the *Monreal* approach to "exceptional and extremely unusual hardship" on statutory and constitutional grounds. He also contends that his due process rights were violated because the IJ did not consider the effect of a head wound on his economic prospects after removal. Because he did not raise these claims before the BIA, we lack jurisdiction to consider them. *See Ramani*, 378 F.3d at 560.

For all the reasons set forth above, we DISMISS the petition in part for lack of jurisdiction and DENY the remainder of the petition.