**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0325n.06

No. 15-4059

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 15, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MANUEL LEON-LEON, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| LORETTA LYNCH, United States Attorney General, | ) | |
| | ) | |
| | ) | **OPINION** |
| **Respondent.** | ) | |
| | ) | |

**BEFORE: BATCHELDER, MOORE, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Manuel Leon-Leon is a Mexican citizen who entered the United States without inspection in 1996 and has lived here ever since. With the exception of a trip to Mexico for his father's funeral, Leon-Leon has remained in the United States, marrying a United States citizen in 1998, and moving to Michigan in 1999, where he was employed for over a decade as a landscaper. In 2011, Leon-Leon was issued a Notice to Appear by the Department of Homeland Security. He conceded that he could be removed from the country, but sought cancellation of removal, arguing that his removal would severely impact his wife because she has a rare and debilitating medical condition and is therefore reliant on his income and assistance with daily tasks. The Immigration Judge ("IJ") found that the evidence provided by Leon-Leon and his wife was unconvincing because their testimony was not credible. The IJ therefore denied Leon-Leon's request for cancellation of removal, and the Board of

Immigration Appeals ("BIA") affirmed. Leon-Leon petitions for review of this denial. We lack

jurisdiction over some of his arguments because they seek only to contest the BIA's weighing of

facts, while our jurisdiction is limited to reviewing questions of law. We therefore **DISMISS** the

petition in part. To the extent that Leon-Leon raises arguments regarding the legal standard

applied by the BIA, we **DENY** his petition because the BIA applied the correct legal standard.

## I.  BACKGROUND

Leon-Leon is a Mexican citizen who entered the United States without inspection on

April 1, 1996. *See* Administrative Record ("AR") at 442–43 (Appl. for Cancellation of Removal

at 1–2). On May 12, 1998, he married Isabel Vega ("Isabel Leon"), a United States citizen. *See*

*id.* at 443 (Appl. for Cancellation of Removal at 2); *id.* at 461 (Marriage Certificate).[1] In 1999,

the two moved to Michigan, where Leon-Leon began work as a landscaper. *See id.* at 444 (Appl.

for Cancellation of Removal at 3).

On June 2, 2011, the Department of Homeland Security issued Leon-Leon a Notice to

Appear for removal proceedings. *See id.* at 518–19 (Notice to Appear). Leon-Leon appeared

before an IJ, conceded removability, and submitted an application for cancellation of removal.

*See id.* at 112–13 (Tr. of Aug. 16, 2011 Hr'g at 2:23–3:13); *id.* at 442–51 (Appl. for Cancellation

of Removal). He requested cancellation on the basis that his wife would suffer "exceptional and

---

[1]During her testimony before the IJ, Leon-Leon's wife gave her name as "Isabel Rae De Leon," although the transcript notes that the court reporter was using a "phonetic sp[elling]." AR at 126 (Tr. of Oct. 29, 2012 Hr'g at 15:21). In their briefs, the parties have referred to her surname as "Leon" or "De Leon." *See, e.g.*, Petitioner's Br. at 12; Respondent's Br. at 6. We refer to her in this Opinion as "Isabel Leon."

extremely unusual hardship" from his removal. *See id.* at 442 (Appl. for Cancellation of Removal at 1). The IJ ultimately denied the request, largely because the IJ seized on the following arguable inconsistencies to find that neither Leon-Leon nor Isabel Leon provided credible testimony:

Trip to Mexico: During Leon-Leon's first hearing, the IJ noticed that Leon-Leon's application for cancellation of removal mentioned that he had been absent from the United States on one occasion since entering the country in 1996, but did not describe the purpose of the travel or the dates on which he was out of the country. *See id.* at 114 (Tr. of Aug. 16, 2011 Hr'g at 4:10–20). The IJ directed Leon-Leon to complete the missing information during a recess, *id.* at 116 (Tr. of Aug. 16, 2011 Hr'g at 6:7–14), and Leon-Leon's application ultimately stated that the trip was for a funeral, and that he was out of the country from January 10, 2002 through January 26, 2002, *id.* at 443 (Appl. for Cancellation of Removal at 2). But the evidence and testimony— at a hearing held over one year later—did not match this account. Leon-Leon could not remember whether he left before or after Christmas in 2001 or whether he returned in January or February of 2002. *See id.* at 231–35 (Tr. of Oct. 29, 2012 Hr'g at 120:3–124:11). Leon-Leon also testified that he was caught crossing the border and sent back to Mexico, only to enter the United States successfully the following day. *See id.* at 210–11, 249 (Tr. of Oct. 29, 2012 Hr'g at 99:6–100:4, 138:21–25). Department of Homeland Security records show that Leon-Leon was caught crossing the border on January 4, 2002, *id.* at 439–40 (Department of Homeland Security Border Apprehension Record), but, when confronted with this, Leon-Leon could not say whether

he truly returned the following day, or on January 26, 2002, as his application for cancellation of removal suggested, *see id.* at 250 (Tr. of Oct. 29, 2012 Hr'g at 139:1–11).

Those same records also reflect that Leon-Leon told the Border Patrol that his name was Arturo Hernandez-Hernandez. *See id.* at 439–40 (Department of Homeland Security Border Apprehension Record). During a June 2, 2011 interview with Department of Homeland Security personnel, he initially "claimed to never have been encountered by Immigration or Border Patrol, to have never used any other names and that his last entry to the United States was in 1996," but later admitted that he was "Arturo Hernandez-Hernandez." *Id.* at 438 (Department of Homeland Security Record of Deportable Alien at 2). Nonetheless, during his first hearing before the IJ, Leon-Leon again denied ever having been known by the name Arturo Hernandez-Hernandez, *id.* at 111 (Tr. of Aug. 16, 2011 Hr'g at 1:14–17), and his application for cancellation of removal stated that he had never been known by another name, *id.* at 442 (Appl. for Cancellation of Removal at 1).

Hardship to Isabel Leon: In seeking to show that his removal would cause severe and unusual hardship to his wife, Leon-Leon introduced evidence of her dependence on him due to her pseudotumor cerebri, which causes her to suffer severe headaches, blurred vision, dizziness, and nausea. *See id.* at 138, 141–42 (Tr. of Oct. 29, 2012 Hr'g at 27:20, 30:3–31:13). Isabel Leon indicated that this condition prevents her from driving, *id.* at 144 (Tr. of Oct. 29, 2012 Hr'g at 33:1–4), that Leon-Leon takes her to the doctor, *id.* (Tr. of Oct. 29, 2012 Hr'g at 33:5–8), and that she did not have anyone else in the United States who could help care for her, *id.* at 157 (Tr.

of Oct. 29, 2012 Hr'g at 46:1–19). Isabel Leon is also largely unable to work or attend to household chores, which Leon-Leon takes care of. *See id.* at 148–52 (Tr. of Oct. 29, 2012 Hr'g at 37:22–41:23). In finding Isabel Leon not credible, the IJ seized on her admission that she has driven a car on one recent occasion, when traveling from Michigan to Maryland with a friend, for approximately one hour. *See id.* at 193 (Tr. of Oct. 29, 2012 Hr'g at 82:21–25). The IJ also relied upon the fact that, although Leon-Leon and Isabel Leon testified that her moving to Mexico with him would be a hardship because she would not be able to receive adequate medical care in Mexico, *id.* at 140, 218 (Tr. of Oct. 29, 2012 Hr'g at 29:2–3, 107:13–22), Leon-Leon later stated that he had never investigated the availability of appropriate medical treatment for Isabel Leon's condition in Mexico, *see id.* at 291–92 (Tr. of Oct. 29, 2012 Hr'g at 180:14–181:18).

Income Tax Issues: In both 2010 and 2011, Leon-Leon claimed his deceased father as a dependent. *See id.* at 259–64 (Tr. of Oct. 29, 2012 Hr'g at 148:3–153:25); *id.* at 323 (2010 Tax Return at 1). Leon-Leon admitted to having informed his tax preparer that his father was alive, first telling the IJ that he was not trying to avoid paying taxes, but later admitting that this was his goal. *Id.* at 266–68, 282 (Tr. of Oct. 29, 2012 Hr'g at 155:12–157:12, 171:2–13).

In view of these inconsistencies, the IJ concluded that "neither the respondent nor his wife were credible witnesses." *Id.* at 83 (IJ Decision at 2). Because their testimony formed the basis for Leon-Leon's application for cancellation of removal, this credibility finding was fatal. The IJ found that Leon-Leon was ineligible for cancellation of removal because he failed to

establish:  (1) 10 years of continuous presence in the United States with absences of no more than 90 days, because he did not provide credible evidence that his one trip to Mexico lasted less than 90 days; (2) that he had good moral character in view of his "several willful misrepresentations"; and (3) that "his removal would result in exceptional and extremely unusual hardship to [his wife]," as the IJ believed that Isabel Leon was not as limited as she suggested in her testimony and that she had potential support from her family in Texas.  *See id.* at 84–86, 106–07 (IJ Decision at 3–5, 25–26).  On appeal, the BIA agreed with the IJ for substantially similar reasons.  *See id.* at 3–6 (BIA Decision).  Leon-Leon then petitioned this court for review.

## II.  ANALYSIS

To obtain cancellation of removal, Leon-Leon needed to "satisfy four requirements: (1) continuous physical presence for at least ten years; (2) good moral character; (3) not having been convicted of certain crimes; and (4) that the removal would result in 'exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence,'" *Montanez-Gonzalez v. Holder*, 780 F.3d 720, 722 (6th Cir. 2015) (quoting 8 U.S.C. § 1229b(b)(1)).  The IJ found that Leon-Leon failed to shoulder his burden of proof on the first, second, and fourth factors, and the BIA agreed.  Although Leon-Leon may petition us for review of the BIA's decision, we lack jurisdiction "to review—any judgment regarding the granting of relief under . . . [8 U.S.C. §] 1229b," *id.* (alterations in original) (quoting 8 U.S.C. § 1252(a)(2)(B)(i)), but "retain jurisdiction . . . to consider 'constitutional claims or questions of law,'" *id.* (quoting 8 U.S.C.

6

§ 1252(a)(2)(D)).  We review such questions "de novo, but substantial deference is given to the BIA's interpretation of the [Immigration and Nationality Act] and accompanying regulations." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).  We focus our review on the BIA's decision, but review the IJ's decision "[t]o the extent the BIA adopted the immigration judge's reasoning." *Id.*

A claim is fact-based—and therefore outside of our jurisdiction—when it "can be evaluated only by engaging in head-to-head comparisons between the facts of the petitioner's case and those of precedential decisions."  *Montanez-Gonzalez*, 780 F.3d at 722 (quoting *Ettienne v. Holder*, 659 F.3d 513, 517–18 (6th Cir. 2011)).  Such arguments are outside of our jurisdiction because differing outcomes on factually similar cases "are an expected result of the discretionary weighing required to make individualized determinations," so "[r]eview that required a tallying of hardships would amount to second-guessing the agency's weighing of factors." *Ettienne*, 659 F.3d at 518.  By contrast, "[w]here our decision requires resolution of a contested interpretation of language in the statute or the regulations, the appeal will fall within our jurisdiction." *Id.* at 517.

Leon-Leon raises three arguments.  First, he asserts that the IJ and BIA were wrong to conclude that he failed to establish the requisite ten years of physical presence in the United States. *See* Petitioner's Br. at 7–9.  Second, he claims that the IJ "improperly shift[ed] the burden of [proof] to [Isabel Leon] by asking her to relocate to Mexico and to provide proof of the requisite hardship in relocation." *Id.* at 3, 10–12.  Third, Leon-Leon believes that the IJ and BIA

erred in concluding that Isabel Leon's family in Texas could take care of her. *See id.* at 12–14. Because we reject his second and third arguments, Leon-Leon is unable to show that he satisfied the hardship factor, which is necessary for obtaining cancellation of removal. We therefore need not assess his argument regarding physical presence.

Leon-Leon's argument that the BIA wrongly placed the burden on his wife to prove that the requisite hardship would flow from her relocating to Mexico with him appears to raise a question of law—that the BIA and IJ applied the wrong standard of proof.[2] The relevant cancellation-of-removal factor requires that "the alien . . . establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse . . . who is a citizen of the United States." 8 U.S.C. § 1229b(b)(1)(D). But that is all that the IJ required. The IJ considered whether removal of Leon-Leon would cause hardship to Isabel Leon, reviewing the evidence submitted by Leon-Leon, who bore the burden of proof. Never was a burden of proof placed on Isabel Leon, who was not even a party to the case. The IJ's questions and reasoning regarding the lack of evidence that relocating to Mexico with Leon-Leon would be a hardship to Isabel Leon were designed to probe the credibility of the two witnesses, as well as the strength of Leon-Leon's evidence that his removal would harm Isabel Leon. As the government notes, we have previously approved the BIA's consideration of such evidence in assessing a hardship determination. *See, e.g.*, *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 505 (6th Cir. 2008) (BIA had considered whether U.S.-citizen child would be severely and unusually harmed by removal

---

[2]Elements of this argument challenge the factual determinations reached by the IJ and BIA, Petitioner's Br. at 11–12, but we lack jurisdiction over those arguments.

where petitioner "failed to show that 'adequate medical treatment and monitoring' would be unavailable if the daughter left for Mexico with him"). Accordingly, the IJ and BIA applied an appropriate legal standard.

Leon-Leon's other argument—that the BIA was wrong to find that he had not demonstrated that Isabel Leon's family in Texas could not assist her—is a purely factual challenge. He suggests that the BIA was wrong because there was "corroborating testimony from the Petitioner and his wife" that the family could not care for Isabel Leon, "and no [contrary] evidence otherwise from government counsel." Petitioner's Br. at 12. Whatever the merits of this argument, "[w]e lack jurisdiction to review the denial of [a] request for cancellation of removal, where [the petitioner] argues that the BIA erred in finding that [his family] would not suffer exceptional hardship due to [his] removal." *Awdi v. Holder*, 486 F. App'x 523, 524 (6th Cir. 2012); *see also Montanez-Gonzalez*, 780 F.3d at 723 ("[W]e lack jurisdiction to second-guess the BIA's judgment call about whether the evidence was sufficient to show that removal would place Montanez-Gonzalez's three citizen daughters in danger."). Whether the BIA and IJ appropriately weighed the evidence is simply beyond our jurisdiction, so we must dismiss Leon-Leon's petition insofar as it raises this argument.

Leon-Leon is therefore unable to demonstrate that the BIA should be overturned insofar as it found that he had failed to "establish[] that removal would result in exceptional and extremely unusual hardship to [his] spouse . . . ." 8 U.S.C. § 1229b(b)(1)(D). Because one must demonstrate all four of the factors listed in 8 U.S.C. § 1229b(b)(1) to obtain cancellation of

removal, Leon-Leon's failure to satisfy that element is fatal to his petition, and we need not analyze his arguments regarding the other factors.

### III. CONCLUSION

For the foregoing reasons, we **DISMISS** the petition in part for lack of jurisdiction, and otherwise **DENY** the petition for review.