NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0257n.06

Case No. 22-3885

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 07, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| AUGUSTINE CHAN-POROJ, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) | OPINION |
| | ) | |

Before: BOGGS, GIBBONS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Petitioner Augustine Chan-Poroj, a native and citizen of Guatemala, seeks review of a Board of Immigration Appeals (BIA) decision affirming the denial of his applications for withholding of removal and protection under the Convention Against Torture (CAT).[1] For the reasons stated below, we deny the petition for review.

## I

Chan-Poroj entered the United States without admission or parole on May 18, 2004. In 2011, the Department of Homeland Security initiated removal proceedings, charging Chan-Poroj with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). With the assistance of counsel, Chan-Poroj admitted to the allegations in the Notice to Appear and

---

[1] There is a discrepancy between the spelling of Petitioner's name, "Augustin," which is reflected in various Guatemalan government documents in the record, and the spelling used by the BIA, "Augustine," which is reflected in our caption for this case. For the sake of consistency, we have adopted the BIA's spelling.

conceded his removability. Thereafter, Chan-Poroj applied for withholding of removal and CAT relief. *See* 11 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 1208.16. He sought protection based on his membership in a social group defined as "people that are returning to Guatemala after living many years in the United States." AR 178. According to Chan-Poroj, members of this group are targeted in Guatemala for kidnapping and extortion due to their perceived wealth.

On December 19, 2018, Chan-Poroj appeared before an immigration judge (IJ). He testified that he feared returning to Guatemala because he believed that gangs would kidnap and torture him. Specifically, Chan-Poroj claimed that he had been chased by gang members twice, roughly fifteen years earlier. He also testified that he had been threatened by gang members on three separate occasions, each involving demands for money. Chan-Poroj testified that during the third and final incident, gang members beat him and threatened to kidnap his family. According to Chan-Poroj, he reported these incidents to the Guatemalan police, but the police indicated that they lacked sufficient evidence to further investigate the matter.

Chan-Poroj testified that he is married with four children, all of whom still live in Guatemala. Although Chan-Poroj's family has not been directly harmed by the gangs, Chan-Poroj testified that his wife was called and threatened by members of a gang in 2011. According to Chan-Poroj, the gang members told his wife that, if she did not give them money, they would kidnap her children. When the gang members later arrived at Chan-Poroj's house, Chan-Poroj's wife hid their children to prevent any harm. Chan-Poroj claims that these incidents were also reported to the police, but that the officers indicated they were unable to do anything without more evidence of the phone call.

Given this background, Chan-Poroj claimed that he is afraid to return to Guatemala, where he fears being kidnapped and tortured by gang members who will assume he has returned from the

United States with money. He also testified that the Guatemalan police are corrupt and will not protect him. Finally, he claimed that he would not be able to relocate to a different area in Guatemala because gangs are "everywhere." AR 149.

At the conclusion of the hearing, the IJ denied Chan-Poroj's applications for withholding of removal and CAT protection and ordered Chan-Poroj removed to Guatemala. Although the IJ found Chan-Poroj's testimony credible, the IJ concluded that Chan-Poroj failed to provide documentation to corroborate his claimed social group or to support his accusations against the local police force in his hometown. The IJ further found that Chan-Poroj failed to establish past persecution. Although Chan-Poroj had been threatened by gangs and beaten on one occasion, he was never seriously injured, and the threats made against him were made only in an attempt to obtain money. Additionally, the IJ concluded that Chan-Poroj's claim failed to establish a nexus to a protected ground. Relying on *Sanchez-Robles v. Lynch*, 808 F.3d 688 (6th Cir. 2015), the IJ found that Chan-Poroj's proposed social group—"people that are returning to Guatemala after living many years in the United States"—was not cognizable because it was neither particular nor socially distinct.

The IJ further found that Chan-Poroj could reasonably relocate within Guatemala. Although Chan-Poroj alleged that gangs were everywhere, he failed to identify any specific threat from those that would endanger him in other areas of the country. Next, the IJ concluded that Chan-Poroj failed to establish that the Guatemalan government is unable or unwilling to assist him. As Chan-Poroj's own testimony confirmed, law enforcement had not refused to assist him, but had instead merely lacked sufficient evidence to further investigate or prosecute the alleged perpetrators. The IJ also noted that the Guatemalan government had undertaken efforts to combat gang activity. On these bases, the IJ denied Chan-Poroj's application for withholding of removal.

The IJ also denied Chan-Poroj's claim for protection under the CAT, finding that Chan-Poroj failed to establish that he would more likely than not be tortured by or with the acquiescence of public officials in Guatemala. Accordingly, the IJ ordered Chan-Poroj removed to Guatemala.

Chan-Poroj appealed to the BIA, which affirmed the IJ's order of removal. Specifically, the BIA affirmed the IJ's findings that Chan-Poroj's proposed social grouped lacked the required social distinction, that Chan-Poroj failed to establish that the Guatemalan government is unable or unwilling to assist him, and that Chan-Poroj failed to demonstrate that it is more likely than not that he will be tortured by or with the acquiescence of public officials.

The BIA also rejected Chan-Poroj's claim that the IJ's decision violated his due-process rights. The BIA found that Chan-Poroj failed to identify any specific factors that the IJ neglected to consider or any alleged defects that resulted in prejudice. Accordingly, the BIA dismissed Chan-Poroj's appeal. Chan-Poroj then brought this timely petition for review.

## II

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). However, we also review the IJ's decision to the extent the BIA adopts its reasoning. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 259 (6th Cir. 2020) (citation omitted).

We evaluate factual findings using the substantial-evidence standard. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). Under this highly deferential review, we accept an agency's findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Guzman-Vazquez*, 959 F.3d at 259 (citations omitted). Such

findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili*, 557 F.3d at 435 (citation omitted). We review questions of law de novo, but we give "substantial deference to the BIA's interpretation of the INA and accompanying regulations." *Morgan*, 507 F.3d at 1057.

## A. Withholding of Removal

To establish entitlement to withholding of removal, an applicant must show that there is a "clear probability" that he will be persecuted if forced to return to his country, and that the persecution would be "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013); 8 U.S.C. § 1231(b)(3)(A). Importantly, "[t]he 'clear probability' standard asks more of the applicant than the 'reasonable possibility' standard for obtaining asylum." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010). Thus, in order to qualify for relief, Chan-Poroj must demonstrate that he will "more likely than not" be persecuted in Guatemala "on account of" his "membership in a particular social group." 8 C.F.R. § 1208.16(b). Whether a particular social group is cognizable under the INA is a question of law which we review de novo. *Sanchez-Robles*, 808 F.3d at 691.

In *Bonilla-Morales v. Holder*, we held that "[a]n alleged social group must be both particular and socially visible." 607 F.3d 1132, 1137 (6th Cir. 2010). And in *Umaña-Ramos*, we defined "social visibility" as "the social salience of the group in a society, or in other words, whether the set of individuals with the shared characteristic would be perceived as a group by society." 724 F.3d at 672. Here, both the BIA and the IJ (collectively the "agency") found that Chan-Poroj's claimed particular social group—"people that are returning to Guatemala after living many years in the United States"—lacked the requisite social distinction. Specifically, the agency concluded that Guatemalan citizens would not perceive those returning to Guatemala after

living many years in the United States as a group set apart from the rest of society. In response, Chan-Poroj argues that members of his proposed social group are socially distinct and "noticeable" due to "their inability to successfully integrate back into Guatemalan society." Pet'r's Br. at 21. But there is simply no evidence in the record to support this explanation.

Additionally, we find that the agency properly relied on *Sanchez-Robles* to reject Chan-Poroj's claimed social group. In that case, we held that the petitioner's proposed social group—"persons who are perceived to have money or access to money due to having spent a significant amount of time in and having familial ties to the United States"—was not cognizable under the INA. *Sanchez-Robles*, 808 F.3d at 691–92. In doing so, we rejected the notion "that individuals returning from the United States to their home countries comprise a particular social group," and we held that "be[ing] the target of persecution for economic gain" was insufficient to establish social distinction. *Id.* at 692. Like the petitioner in *Sanchez-Robles*, Chan-Poroj proposed a particular social group consisting of individuals returning from the United States to their home country who will be targeted for persecution for economic gain.

Chan-Poroj attempts to distinguish his proposed social group from that in *Sanchez-Robles* by arguing that his is "not based on perceived wealth." Pet'r's Br. at 22. But this characterization is misleading. For one, Chan-Poroj's withholding application expressly claimed that members of his purported social group would be targeted for kidnapping and extortion "due to their presumed wealth." AR 178. And at the hearing before the IJ, Chan-Poroj repeatedly testified that he feared returning to Guatemala because he believed gangs would attempt to extort him. F or example, Chan-Poroj testified that gangs would torture him "to see if I have money" and to "ask [for] money from my family." *Id.* at 141. And later, when asked by the IJ whether he feared the gangs in Guatemala "because they would see [him] as having money," Chan-Poroj responded, "Yes." *Id.*

at 149. Finally, Chan-Poroj's opening brief clearly states that Chan-Poroj believes gangs will harm him "because they [will] perceive him as having money." Pet'r's Br. at 10.

In sum, the BIA properly determined that Chan-Poroj's proposed social group is not cognizable under the INA. And because Chan-Poroj's entitlement to withholding of removal requires a showing that he will more likely than not be subject to persecution "on account of" his membership in a particular social group, this finding is sufficient to defeat his withholding-of-removal claim. *See Sanchez-Robles*, 808 F.3d at 692–93.

**B. CAT Relief**

We now consider Chan-Poroj's CAT claim. To succeed on a CAT claim, an applicant must prove that it is "more likely than not" that he will be tortured if removed to his native country. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007); 8 C.F.R. § 1208.16(c)(2). "Torture" is defined as "the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)).

Chan-Poroj argues, as he did before the agency, that "the Guatemalan government has acquiesced to the torture of its citizens at the hands of the gangs." Pet'r's Br. at 45. The agency, however, concluded otherwise, finding that the record evidence failed to demonstrate that Chan-Poroj is more likely than not to be tortured by or with the acquiescence of any government official. Chan-Poroj responds that he is entitled to relief because the Guatemalan government "is completely unable to control the gangs." *Id.* at 46. But, as the BIA noted in its decision, "[w]hether a 'government is unable to control the gangs does not constitute acquiescence.'" AR 5 (quoting *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015)).

On appeal, Chan-Poroj continues to point to evidence indicating that the Guatemalan government is incapable of preventing gang violence, going so far as to say that "the government in Guatemala is miserably losing its battle against gangs and narcotic traffickers." Pet'r's Br. at 45–47. But again, the fact that Guatemalan officials have struggled to combat gang activity does not mean that public officials, or any other authorized individuals, have *acquiesced* to Chan-Poroj's alleged harm. To the contrary, the record evidence demonstrates that the Guatemalan government has continuously engaged in efforts to combat gang violence.

For example, a U.S. Department of State report regarding human-rights practices in Guatemala, as well as an International Crisis Group report on gang violence and extortion in Central America, were among the supporting documents Chan-Poroj provided the agency. From these reports, the BIA concluded that, although "there are reports of corruption within law enforcement, . . . the record also demonstrates the Guatemalan government has made efforts to combat gang violence, which have increased in recent years." AR 4 (citing Exh. 3, AR 192–93; Exh. 6, AR 280–88). The efforts outlined in these cited reports include the establishment of specialized offices to combat extortion, the development of national prevention strategies by the Vice Ministry of Violence and Crime Prevention in Guatemala, and the exchange of information between Guatemala, El Salvador, and Honduras, to more effectively combat gang violence.

Given this evidence of Guatemala's efforts to address gang activity, we find that substantial evidence supports the agency's determination that Chan-Poroj failed to establish that he is more likely than not to experience torture "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." AR 5 (quoting 8 C.F.R. § 1208.18(a)(1)). Because Chan-Poroj offers no evidence compelling a contrary conclusion, his CAT-protection claim fails.

### C. Due Process

"Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Montanez-Gonzalez v. Holder*, 780 F.3d 720, 723 (6th Cir. 2015) (citation omitted). However, "the immigration judge retains 'broad discretion in conducting that hearing.'" *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003)). In evaluating whether a due-process violation occurred, we ask whether "a defect in the removal proceeding" caused prejudice. *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012). Said differently, the petitioner must prove that "due process violations led to a substantially different outcome from that which would have occurred in the absence of these violations." *Id.* (citation omitted). We review alleged due-process violations de novo. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016).

Chan-Poroj contends that the agency violated his due-process rights by failing "to consider all factors present," and by issuing opinions that "lacked adequate factual and legal analysis." Pet'r's Br. at 49. According to Chan-Poroj, these "defects" resulted in prejudice because they led to the denial of his applications for withholding of removal and CAT relief. For the following reasons, Chan-Poroj's due-process claim is without merit.

First, Chan-Poroj cannot demonstrate that an error occurred. He makes only a sweeping argument that the IJ and BIA failed to consider relevant factors, but he does not identify which factors—if any—the agency actually neglected to consider. And to the extent that Chan-Poroj argues the IJ violated his due-process rights by failing to "consider the effect of [Chan-Poroj's] removal," Pet'r's Br. at 49, there is simply no support in the record for this conclusory accusation.

Second, Chan-Poroj cannot demonstrate that any alleged error ultimately prejudiced his case. Chan-Poroj merely makes the circular argument that alleged defects in his immigration

proceedings were prejudicial because they led to the denial of his applications. This falls far short of meeting Chan-Poroj's burden of demonstrating substantial prejudice. And "[b]ecause proof of prejudice is necessary to establish a due process violation in an immigration hearing, [ ] we need not address the merits of a [due process] claim if the petitioner fails to demonstrate prejudice." *Marqus v. Barr*, 968 F.3d 583, 591 (6th Cir. 2020) (alterations in original) (internal citation and quotation marks omitted); *see also Vasha v. Gonzales*, 410 F.3d 863, 872–75 (6th Cir. 2005) (denying the petitioner's due-process claim when he failed to demonstrate that he was prejudiced by the IJ's actions).

In sum, Chan-Poroj fails to identify any error by the agency with respect to its evaluation of the evidence, or to demonstrate that any prejudice ultimately resulted from the defects he alleges. Thus, Chan-Poroj fails to establish a due-process violation, and we find no error in the BIA's conclusions that Chan-Poroj "had a full and fair opportunity to present his case," that "the immigration judge provided specific factual findings and legal conclusions," and that "the immigration judge's decision reflects that her reasoning and conclusions are legally correct." AR 5. Accordingly, we deny Chan-Poroj's due-process claim.

**III**

For the foregoing reasons, we DENY Chan-Poroj's petition for review.