NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0287n.06

No. 23-3989

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 01, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CATARINO PEREZ-GUZMAN, | ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

Before: GRIFFIN, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Catarino Perez-Guzman petitions for review of a Board of Immigration Appeals decision affirming the denial of his application for cancellation of removal. We deny the petition, as Perez-Guzman has not shown that his removal would result in exceptional and extremely unusual hardship to his family as required for relief under 8 U.S.C. § 1229b(b)(1)(D).

**BACKGROUND**

Catarino Perez-Guzman is a citizen and native of Mexico who has lived in the United States without legal immigration status since 2000. He married his wife Anna in 2009. The couple lives in Tennessee with their three children: Andres, born in 2001;[1] Daniel, born in 2008; and Julian, born in 2011. Perez-Guzman's wife and children are all citizens of the United States.

---

[1] Although Perez-Guzman is not Andres's biological father, Andres considers him to be his father.

Perez-Guzman was placed in removal proceedings in 2012 after receiving a DUI. He had also received a DUI in 2004. Perez-Guzman retained counsel and successfully switched the venue of his proceedings to Tennessee. At his initial hearing before the Immigration Judge (IJ), Perez-Guzman appeared with counsel, conceded removability, and requested administrative closure of his proceedings. The IJ denied the request to administratively close for reasons not relevant here, ordered Perez-Guzman to voluntarily depart the United States, and gave him an application for cancellation of removal. Perez-Guzman's counsel informed the IJ that he would apply for cancellation, and the IJ set a hearing to consider his application.

At the cancellation hearing, the only issue the parties contested was whether Perez-Guzman had shown that his wife and children would suffer an extreme and unusual hardship if Perez-Guzman were deported. The government stipulated that Perez-Guzman met the other requirements for cancellation of removal.

Perez-Guzman, Anna, and Andres testified before the IJ about their financial situation, their medical issues, and the difficulties they would experience if Perez-Guzman were deported. They explained how Perez-Guzman had built a middle-class life for his family during the time he had lived in the United States. He worked for a home construction company and had a side business installing tile; these pursuits netted $70,000 in annual income. Anna described her job in the quality control department of a book printing factory. There she earned $16 an hour, which works out to about $24,000 a year, and received health insurance for the family. Anna's mother, Perez-Guzman's mother-in-law, worked in the same factory. The couple testified that they earned approximately $12,000 a year from a rental property they own in full that is worth about $120,000. The family live in a home worth about $280,000, and in 2019 they owed around $206,000 on their

mortgage. Perez-Guzman told the IJ that if he were deported, his mother-in-law might be able to help support the family, and Andres testified that he would be willing to work to do so as well.

The family also discussed Anna's and Andres's health issues. Anna occasionally has hypertension, and both she and Andres suffer from depression and anxiety. A psychological evaluation in the record noted that Anna reported "relatively low levels of emotional distress" in the weeks preceding her examination, but that she had suffered panic attacks and depressive episodes and possibly was suppressing more negative feelings. When Andres learned that his father might be deported, he fell into a depression, wouldn't leave his room, and started eating cardboard. Neither Anna nor Andres sought regular treatment for these issues. Though Andres took medication for depression during early adolescence, neither he nor Anna had taken any medication for their conditions in the five years preceding the hearing.

"Considering the evidence as a whole," the IJ determined that Perez-Guzman had not shown his family would face anything "beyond the ordinary hardship that would be expected if a close family member leaves the United States." AR 52–53. The IJ recognized that Perez-Guzman's departure might mean that his family in the United States would have a lower standard of living, but explained this was insufficient to show the necessary hardship. The IJ pointed out that Anna could continue to earn income and receive health insurance for her family through her work, Perez-Guzman could provide for his family by working in Mexico, and the family could support itself with its assets in the United States. The IJ also noted that even though Anna and Andres had "some prior medical history," neither were receiving treatment for their conditions, which indicated that their mental health issues were not severe enough to clear the hardship threshold. *Id.* at 52. Since Perez-Guzman was ineligible for cancellation of removal, the IJ ordered him removed from the United States and granted him voluntary departure.

Perez-Guzman appealed to the Board of Immigration Appeals, which affirmed the IJ's decision. The only arguments Perez-Guzman raised in his notice of appeal and brief to the Board were that the IJ overlooked facts in the record and misapplied Board precedent in analyzing the hardship factors. The Board concluded that the IJ did not err in determining that Perez-Guzman and his wife could continue to work to support their family upon his departure, and that neither Anna nor Andres had a serious medical condition. The Board agreed with the IJ that the economic difficulties that Perez-Guzman's family would face after his departure were not exceptional and extremely unusual.[2] The Board dismissed the appeal and reinstated the grant of voluntary departure. Perez-Guzman timely petitioned for review of the Board's decision.

## ANALYSIS

The only claim that Perez-Guzman exhausted in the administrative proceedings below is that the IJ and Board erred by denying him cancellation of removal.[3] We disagree, and therefore deny his petition for review.

---

[2] The Board also noted that at the time of its decision, Andres was too old to be a "qualifying relative" within the meaning of the law. *See* 8 U.S.C. § 1101(b)(1) (defining "child" as a person younger than twenty-one); *Araujo-Padilla v. Garland*, 854 F. App'x 646, 650 (6th Cir. 2021) (citing *Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 830–31 (B.I.A. 2012)) ("Only . . . children who were under twenty-one at the time [of the IJ's adjudication] counted as qualifying relatives for purposes of the cancellation-of-removal statute.") . Regardless, the Board still affirmed the IJ's conclusion that even before Andres had turned twenty-one, "his hardship [did] not rise to the level of exceptional and extremely unusual." AR 3 n.1.

[3] Perez-Guzman also argues that the IJ erred when it denied his motion to administratively close his removal proceedings, and that declining to cancel Perez-Guzman's removal or to administratively close his proceedings violates his Fifth Amendment due process rights. But as the government points out, he did not raise either of these arguments in his notice of appeal of the IJ's decision or in his brief before the Board. Under 8 U.S.C. § 1252(d)(1) and our precedent, an immigration petitioner must administratively exhaust each issue by identifying it in his notice of appeal and any briefing to the Board. *See Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021). Though exhaustion is not a jurisdictional prerequisite to our review, it applies when, as here, the government has raised it. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 416–19, 423 (2023). Since

Perez-Guzman sought relief from deportation by applying for the cancellation of his removal. *See* 8 U.S.C. § 1229b(b)(1). To succeed, he needed to prove that he was statutorily eligible for this relief. The government stipulated he had satisfied all of the statutory eligibility factors except for one: that his "removal would result in exceptional and extremely unusual hardship to" his citizen wife and children. *Id*. § 1229b(b)(1)(D). The question for our review is whether the IJ and the Board erred by concluding that Perez-Guzman had not shown the required level of hardship and denying cancellation of removal as a result. Where the Board adopts the IJ's reasoning and adds its own reasoning—as it did in this case—we review both the IJ's decision and the Board's additional analysis. *See Reyes v. Lynch*, 835 F.3d 556, 559 (6th Cir. 2016).

Whether a set of factual circumstances qualifies as an "exceptional and extremely unusual hardship" is "a mixed question of law and fact" that we have jurisdiction to review. *Wilkinson v. Garland*, 601 U.S. 209, 221–22 (2024); *see* 8 U.S.C. § 1252(a)(2)(D). We generally review purely legal questions de novo, but apply "a more deferential standard of review" to the IJ and Board's analysis of this fact-intensive mixed question. *Wilkinson*, 601 U.S. at 222. The factual determinations embedded within the hardship determination are "unreviewable." *Id*. at 225.

Perez-Guzman has not shown that the Board or the IJ erred in concluding that his family would not face "exceptional and extremely unusual hardship" upon his departure from the United States. As the Board and the IJ explained, a qualifying hardship is "substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." *Velasquez-Perez v. Garland*, 854 F. App'x 40, 41 (6th Cir. 2021) (quoting *Montanez-Gonzalez v. Holder*, 780 F.3d 720, 722–23 (6th Cir. 2015)). The circumstances that are relevant to this

---

Perez-Guzman did not raise these two arguments in his notice of appeal or brief to the Board, we will not consider them.

determination are the "ages, health, and circumstances" of Perez-Guzman's citizen family members, the relative depth of his personal and economic roots in the United States and Mexico, and the financial and political realities he will face in Mexico compared to the United States. *See Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021) (quoting *In re Monreal-Aguinaga*, 231 I. & N. Dec. 56, 63 (B.I.A. 2001)); *Araujo-Padilla v. Garland*, 854 F. App'x 646, 650 (6th Cir. 2021). Ultimately, the question is whether all of the disadvantages that the deportation will impose, when combined, amount to something that is not just "difficult," but "extremely unusual." *Velasquez-Perez*, 854 F. App'x at 41 (citation omitted).

The economic hardship that Perez-Guzman's family may face upon his departure is not "exceptional and extremely unusual." The IJ determined that Perez-Guzman's work experience in the United States will help him earn a living in Mexico so that he might be able to send money to his family in the United States. This potential income stream—combined with Anna's wages from the book factory, the couple's rental property income, and the financial cushion of their assets in the United States—could provide his family with modest financial security. Even though Perez-Guzman's deportation will likely lessen his family's financial resources, it will not leave them destitute, and "economic detriment alone" of the magnitude that Perez-Guzman's family will face "is insufficient" to establish the requisite hardship. *See Araujo-Padilla*, 854 F. App'x at 651 (quoting *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (B.I.A. 2002)). This is true especially where, as here, the family will have access to other streams of income. *See id*. at 650 (citing *Navarro v. Holder*, 505 F. App'x 441, 447 (6th Cir. 2012)).

Perez-Guzman's evidence about the consequences of his removal on his family's health is also unpersuasive. Notably, he does not dispute the IJ's factual determination that neither his wife Anna nor his son Andres receive any ongoing medical treatment for their health conditions.

With this in mind, the IJ and the Board did not err when they determined that neither Anna's occasional hypertension nor the mental health conditions she and Andres sometimes experience are the type of "very serious medical issue" that can support a hardship finding. *Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL 4782689, at *4 (6th Cir. Oct. 13, 2021) (citing *In Re Monreal-Aguinaga*, 23 I. & N. Dec. at 63). This is not a qualifying hardship even when considered together with the economic stresses that Perez-Guzman has described. All told, the IJ and the Board did not err in their legal analysis of the hardship issue.

None of Perez-Guzman's counterarguments change this conclusion. To start, he challenges the IJ's factual determinations that, upon his departure, he and his wife would still be able to work to provide reasonable income to support their family. He asserts that Anna's modest income from the factory could not support all of the family's expenses. He also claims it was "unrealistic" for the IJ to conclude that he could find work in Mexico that would make up the difference, especially after spending the majority of his life in the United States. Pet'r Br. 27–28. Perez-Guzman further emphasizes that his son Andres might have to work rather than pursue a college education so that his family can financially sustain itself. We may not review the IJ's factual determination that Anna will be able to provide for the family. *See Wilkinson*, 601 U.S. at 225. And, as we have explained, Perez-Guzman may not win relief here on the basis that his family's income will likely shrink. We recognize that financial difficulty is certainly hardship, but it is one that accompanies many deportations, and does not constitute exceptional hardship within the meaning of the statute. *See Araujo-Padilla*, 854 F. App'x at 651.

Next, Perez-Guzman submits that the Board and the IJ did not consider the possibility that his departure could worsen his children's health. But given the lack of evidence of ongoing mental health treatment for Andres, the IJ reasonably concluded that his health conditions could not

sustain a hardship finding. Perez-Guzman also asserts that, even though his younger children have no documented medical issues, "it is generally common knowledge that the loss will be severe if they are separated from their father." Pet'r Br. 31. We also note that his wife's psychological report opined that the family's younger children might experience trauma associated with poverty upon Perez-Guzman's departure. Even so, this generalized reference to mental health issues does not establish an exceptional and extremely unusual hardship. *Cf. Francisco-Diego v. Garland*, No. 21-3870, 2022 WL 1741657, at *4 (6th Cir. May 31, 2022).

Finally, Perez-Guzman asserts that the Board erroneously relied on *Matter of J-J-G-*, 27 I. & N. Dec. 808 (B.I.A. 2020), without recognizing that there are several factual distinctions between that case and this one. But the Board cited *Matter of J-J-G-* for the straightforward proposition that a citizen relative must have a serious medical condition to establish exceptional hardship; it did not say that the facts of that case mirrored the facts of Perez-Guzman's. This kind of reasoning is not a legal error. Given the way the Board used the cited case in its analysis, the factual differences that Perez-Guzman identifies are irrelevant.

Perez-Guzman has not shown error in the IJ and Board's denial of his application for cancellation of removal.

## CONCLUSION

For these reasons, we deny Perez-Guzman's petition for review.